[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Anthony Sterling purchased the lot on which his house was constructed in 1987. This property, one of 3 lots, relatively flat with a farm to the rear. He knew the builder, the defendant, Anthony Albino from his prior residence. Albino did business as Contemporary Development Co. He contacted Albino in 1987 to build his present residence. The plaintiff wanted an oriental house. Plaintiffs' exhibit 1 is the contract between the plaintiff and Contemporary Development dated June 25, 1987. The work on the plaintiff's residence began after the contract was signed and the foundation was completed in July of 1987.
The contract price for the residence was $341,000.00. The plaintiff came to the site during the foundation work and observed students working there. He voiced his objection to Albino who was overseeing this work. He saw no drainage pipes or crushed stone around the foundation. The plaintiff moved into the dwelling on March 8, 1988. CT Page 4514
As constructed, two rooms on the lower level were designed to avoid sunlight including a gallery for his art work. The plaintiff stated Albino knew about this gallery when the foundation was poured.
The plaintiff discovered moisture and water in the gallery and lower level in April of 1989. He notified Albino and removed the art work from the walls shortly after discovering water in these areas. The plaintiff testified as to the damaged art work consisting of nine pieces including seven paintings and 2 sculptures, they are: The 36 Immortal Poets, The 36th Poetess, Miyamoto by Otsuka, Golden Messages by Otsuka, Eyes of the Butterfly by Otsuka, Frederich Hart's "Contemplation", Hart's "Memoir", a lucite sculpture, "The Lady of the 36 Poets", by Hisashi and last, "The First Lady of the Poets", a total paid loss of $36,540.00. The plaintiff had spent 20 years collecting his works. At the time of this loss, plaintiff was insured under two policies, one with Great American Insurance and one with Aetna Insurance. The plaintiff submitted the art loss to Great American Insurance and that company paid him the sum of $37,100.00. Great American's expert computed salvage for the damaged art at 50% of the paid loss and the plaintiff re-purchased the damaged art for 50% of $37,100.00 receiving a net payment from the carrier of $18,550.00. On the art claim submitted to Aetna on August 21, 1989, the plaintiff received $36,540.00. However, Aetna made no deduction for salvage and the plaintiff again retained all of the damaged art.
The plaintiff's building expert, Douglas Harrison testified as to the deficiencies in the foundation installed by the defendants. He stated the elevation of the foundation was one foot lower than it should be, the stone around the foundation was barely adequate; the perforated stone was not properly buried; there was contamination of the piping around the exterior of the house which fouled the system; he found B board saturated with silt contaminating the pipes. Finally, the iron ties in the foundation were not cutoff allowing water to penetrate the foundation. Harrison concluded that the work performed by the builder did not meet or satisfy the normal standards of construction so that it was only a matter of time before the soil penetrated the pipes and allowed water to enter the foundation into the dwelling. He also stated this process could take upwards of 18 months. He abandoned the old system and installed a new system around the foundation. CT Page 4515
The evidence demonstrates that the basement and gallery area flooded due to the negligent construction of the foundation including the failure of the footing drains. It follows that the art work previously described in this opinion was damaged as a result of the water seepage, flooding and humidity to the basement and gallery areas. On the issue of standing with respect to Aetna Insurance Company, it has been held: "the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. The principle has been frequently expressed in the form of that the rights of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights may have in this matter." Wilkinson v. Boats Unlimited Inc.,236 Conn. 78 (1996). The defendant in the instant case suggests to this court that since plaintiff's original lawsuit was instituted by Attorney Joseph Mengosha to recover for his damages and losses including the damaged art claim, the mere filing of an appearance by Aetna's counsel, Attorney Milano negates any standing to prosecute Aetna's claim as subrogee of Dr. Sterling. Section 100 of the Connecticut Practice Book reads in part:
 . . .no action shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in. . .
whereas, Section 101 reads:
 When any action has been commenced in the name of the wrong person as plaintiff the court may, . . . allow any other person to be substituted or added as plaintiff.
This court finds the plaintiff, Aetna Insurance Company has standing to bring or prosecute this action although the suit was not brought initially in their name.
On the issue of whether the defendant Albino should be held liable as the contract previously referred to was signed by him only in his corporate capacity, the court finds that Albino oversaw the construction and should be held responsible in his individual capacity as well as the defendant corporation. As held in Basta v. Today's Adoption, No. 119321 (July 25, 1995) CT Page4516 Ct. Sup. 8514.
 "Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal, or corporation he is liable to third persons injured thereby."
Further, at page 8519, the court stated:
 "It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation is liable. . . . Accordingly, the fact the defendants were acting on behalf of the corporation when they committed the alleged torts would not shield them from liability on an individual basis."
This court, therefore, finds that plaintiff's dwelling and more specifically, the foundation was negligently constructed resulting in the plaintiff's art loss and holds both defendants liable for said loss.
The defendants next raised the issue of the Statute of Limitations in as much as the original plaintiff in this lawsuit was Dr. Anthony Sterling rather than the Aetna Insurance Company. The defendant contends that Aetna was well aware of its loss in 1989 and by its subsequent payment to Dr. Sterling should have initiated their claim in this lawsuit when originally brought in 1990. In Federal Deposit InsuranceCorporation v. Retirement Management Group, Inc., 31 Conn. App. 80,84-85, that court stated "As long as the [the] defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitation defense. . . . Thus, an amendment substituting a new plaintiff [will] relate back if the added plaintiff is the real party in interest. This court rejects any claim that the plaintiff's claim is barred by the statute of limitations.
On the issue of damages, the court finds and it is undisputed that Dr. Sterling recovered $36,540.00 from Aetna Insurance. The defendants have raised the issue of mitigation of damages. The defendants, in their proof offered a letter CT Page 4517 from Aetna's expert appraiser, Mark Pollin who stated that the damaged art was restorable and had a salvage value of 25%.
This court finds the better evidence is that the salvageable value of the damaged art amounted to fifty (50%) of the claimed loss of $36,540, reducing Aetna's recoverable subrogation claim to $18,270. "Generally the defendant is allowed to show that the act or omission which forms the basis of the complaint was a benefit as well as an injury to the complainant. Although courts may explain this result as being mitigation of the damages recoverable from the defendant, it is only a finding of the complainant's net loss. Damages are not "mitigated by the amount of the benefit; the benefit is received in evidence, if at all, to measure the net damages for which the defendant will be charged. 22 Am.Jur.2d 628, § 548. ". . .nor can he recover the full value of the property in such case where it appears that after it was damaged he could have sold it for more than a nominal amount. . . .one performs duty to mitigate his damages by selling damaged property for salvage. A failure to salvage the property precludes the plaintiff from seeking recovery from the original tortfeasor for damage that occurs after the accident." Id., 628. The court here finds that Aetna failed to take into account the salvage value of the damaged art.
Accordingly, judgment may enter in favor of the plaintiff to recover the sum of $18,270.00 from the defendant together with costs of suit but without interest.
BY THE COURT,
GROGINS, JUDGE